## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:24-CV-60013-BECERRA/AUGUSTIN-BIRCH

**MACSOUTH FOREST PRODUCTS, LLC,**

      **Plaintiff,**

**v.**

**CURRENT BUILDERS, INC.,** *et al.*,

      **Defendants.**

_____/

### REPORT AND RECOMMENDATION ON DEFENDANTS
### FREDERICK COLANDREO AND MICHAEL TAYLOR'S MOTION TO DISMISS

This cause comes before the Court on Defendants Frederick Colandreo and Michael Taylor's Motion to Dismiss. DE 74. The Honorable Jacqueline Becerra, United States District Judge, referred the Motion to the undersigned United States Magistrate Judge. DE 76. Plaintiff MacSouth Forest Products, LLC filed a response, DE 82, and Defendants Colandreo and Taylor filed a reply. DE 92. The Court has carefully considered the briefing and the record and is otherwise fully advised. For the reasons set forth below, the Court **RECOMMENDS DENYING** Defendants Colandreo and Taylor's Motion to Dismiss.

### I. Background

This litigation concerns numerous construction projects and Plaintiff's allegations that it either did not receive payment or did not receive timely payment for its deliveries of lumber and materials to those construction projects. *See* DE 65. In addition to the counts Plaintiff raises against the construction company Defendants—Defendants Current Builders, Inc., CB Wall Panels, Inc., and CB Structures Services, Inc. (collectively, the "CB Entities")—Plaintiff pleads counts of common law fraud, negligent misrepresentation, and breach of fiduciary duty against two

corporate officers of the CB Entities: Defendant Colandreo, the CB Entities' CFO, and Defendant Taylor, the CB Entities' CEO. *Id.* ¶¶ 140–233 (counts against Defendant Colandreo); *id.* ¶¶ 255–327 (counts against Defendant Taylor). In response to Plaintiff's Corrected Second Amended Complaint, Defendants Colandreo and Taylor filed the present Motion to Dismiss, contending that Plaintiff fails to state a claim for any of the causes of action it asserts against them.

## II. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court can dismiss a pleading for failure to state a claim. Dismissal for failure to state a claim under Rule 12(b)(6) "is appropriate when a plaintiff fails to allege facts sufficient 'to raise a right to relief above the speculative level' or fails to 'state a claim to relief that is plausible on its face.'" *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555–56 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, a court must accept all well-pled factual allegations as true. *Id.* at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Moreover, a court may consider exhibits attached to a complaint when ruling on a motion to dismiss. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). And if the exhibits appended to a complaint contradict the allegations therein, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

## III.  Plaintiff's Counts Against Defendant Colandreo

Plaintiff pleads three counts against Defendant Colandreo: (1) common law fraud, (2) negligent misrepresentation, and (3) breach of fiduciary duty. The factual allegations underlying

these counts are the same, and the Court begins by recounting those allegations. Afterwards, the Court evaluates the arguments Defendant Colandreo raises in the Motion to Dismiss.

### A. Plaintiff's Allegations

For all three of its counts against Defendant Colandreo, Plaintiff begins by averring that Defendant Colandreo was a licensed and certified professional accountant and the CFO of the CB Entities. DE 65 ¶¶ 142, 145. Thus, Plaintiff maintains that Defendant Colandreo "had superior knowledge to third party creditors, including [Plaintiff], of company finances and the ability of [the CB Entities] to make timely payments to creditors of financial obligations." *Id.* ¶ 147. As a result, Plaintiff alleges that, as of March 2023, Defendant Colandreo "either knew or should have known that [the CB Entities] were insolvent or on the verge of insolvency." *Id.* ¶ 151. And since the CB Entities purportedly owed Plaintiff money for Plaintiff's deliveries to one of the construction projects at issue, *id.* ¶ 149, Plaintiff asserts that Defendant Colandreo, knowing the CB Entities were insolvent or on the verge of insolvency, owed creditors, such as Plaintiff, certain fiduciary duties. *Id.* ¶ 152.

On April 17, 2023, Plaintiff alleges that a telephone call occurred between Defendant Colandreo and Plaintiff. *Id.* ¶ 154. On this call, Defendant Colandreo allegedly acknowledged that the CB Entities owed Plaintiff $1,341,546.92 for Plaintiff's deliveries to one of the construction projects and stated that the CB Entities would pay Plaintiff the amount owed in six weekly installments beginning on April 21, 2023. *Id.* However, Plaintiff avers that Defendant Colandreo knew or should have known that the CB Entities could not make the promised payments and that Defendant Colandreo made the promise "with knowledge that [the CB Entities] had no intention to make those payments." *Id.* ¶ 156. Plaintiff further claims that Defendant Colandreo "intentionally made the statement . . . knowing it was false, to induce [Plaintiff] to forbear from

insisting upon immediate payment as a condition for refraining from suing the [CB Entities] for the money due." *Id.*

Nevertheless, Plaintiff states that while it agreed to Defendant Colandreo's proposed payment agreement, the CB Entities did not immediately execute that agreement. *Id.* Instead, the CB Entities made two partial payments, one on April 26, 2023, and another on May 9, 2023. *Id.* ¶ 158. After making the second partial payment on May 9, 2023, Defendant Colandreo allegedly emailed Plaintiff, stating that he would execute the proposed payment agreement after it was updated to reflect the two partial payments already made. *Id.* ¶ 159. Plaintiff avers that it updated the payment agreement to reflect the total amount owed after those two partial payments and that Defendant Colandreo subsequently executed the payment agreement on May 10, 2023. *Id.* ¶¶ 160–61.

On May 11, 2023, a Zoom video teleconference meeting purportedly took place between Plaintiff and Defendant Colandreo, along with other corporate officers of the CB Entities. *Id.* ¶ 163. At this Zoom meeting, Defendant Colandreo allegedly acknowledged the existence of the payment agreement and that the first payment under the agreement was due on May 12, 2023. *Id.* ¶ 164. However, Plaintiff asserts that the CB Entities failed to make the first payment on May 12, 2023. *Id.* ¶ 165. Moreover, Plaintiff claims that the CB Entities did not make any payments as required under the payment agreement and that the only further payment Plaintiff received from the CB Entities was a payment of $30,454.60 on July 31, 2023, well past the deadlines established in the payment agreement. *Id.* ¶ 167.

Accordingly, Plaintiff maintains that Defendant Colandreo executed the May 10 payment agreement with knowledge that the CB Entities had no intention of making the payments promised therein. *Id.* ¶ 169. Furthermore, Plaintiff avers that Defendant Colandreo knew that the CB Entities were either insolvent or on the verge of insolvency when he executed the payment agreement and

that Defendant Colandreo also knew the CB Entities did not have the ability to make the promised payments. *Id.* ¶¶ 170–71. Concerning Defendant Colandreo's reason for allegedly making the fraudulent statements, Plaintiff claims that Defendant Colandreo made the false representations to induce Plaintiff to delay or forbear the filing of a lien on the construction projects at issue or the filing of a lawsuit. *Id.* ¶ 172. And as a result of Defendant Colandreo's purportedly fraudulent statements, Plaintiff claims it has been damaged because it: (1) did not receive payments due for the construction project, which resulted in a lost use of money from those payments; (2) should have received a contracted rate of 18% interest on the amounts due; (3) lost priority against other claimants and creditors of the CB Entities, specifically at least six creditors who initiated lawsuits before Plaintiff initiated litigation; and (4) faces a risk that the CB Entities' assets will be exhausted before Plaintiff can recover from a potential judgment.

**B. Defendant Colandreo's Motion to Dismiss Arguments Concerning the Fraud Count**

In the Motion to Dismiss, Defendant Colandreo raises three arguments as to why Plaintiff's fraud count fails to state a claim: (1) Plaintiff improperly bases its fraud claim on future action, (2) Plaintiff improperly makes fraud allegations "upon information and belief," and (3) the damages Plaintiff claims either are unrelated to Plaintiff's fraud allegations or are too speculative. DE 74 at 3–7. The Court will examine each argument in turn.

### 1. Future Action

Defendant Colandreo contends that Plaintiff's fraud count against himself is based on a promise of future action since Plaintiff alleges that he fraudulently made promises of future payments. *Id.* at 4. And Defendant Colandreo maintains that such "statements of a future action" are "not the proper basis for a fraud claim." *Id.* While Defendant Colandreo properly states the general rule under Florida law, he omits the exception.

Under Florida law, "[a]n action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact." *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001). However, there is a well-established exception to this rule when "the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform." *Id.*;[1] *see, e.g.*, *Wadlington v. Cont'l Med. Servs., Inc.*, 907 So. 2d 631, 632 (Fla. 4th DCA 2005) ("An exception to this general rule is that where the promise to perform a material matter in the future is made without any intention of performing or made with the positive intention not to perform . . . ." (quotation marks omitted)); *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998) ("[A] fraud claim can be based on misrepresentations as to past experience, or promises of future action where at the time the statement was made the maker had no intent to perform." (citation omitted)); *Nodus Int'l Bank, Inc. v. Arocha Hernandez*, 511 F. Supp. 3d 1316, 1324 (S.D. Fla. 2021) ("In short, a promise of future action cannot be the basis of a fraud claim unless the promisor lacks the intent to make good on that promise at the time the promise is made.").

Here, although Plaintiff alleges that Defendant Colandreo fraudulently promised the CB Entities would make payments in the future, Plaintiff also claims that Defendant Colandreo made these promises knowing the CB Entities had no intention of fulfilling the promises. *See* DE 65 ¶ 156 (alleging Defendant Colandreo promised the CB Entities would make installation payments in the payment agreement despite having "no intention to make those payments"); ¶ 169 ("COLANDREO requested and executed the Payment Agreement with knowledge that [the CB

---

[1] In the reply, Defendant Colandreo contends that *Mejia*'s holding is limited, DE 92 at 4, but the Court notes that the case Defendant Colandreo cites as limiting the holding of *Mejia* refers to a different holding of *Mejia* from the one discussed here. *See Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924, 928 (Fla. 4th DCA 2002) (explaining that *Mejia* held that the "existence of a merger or integration clause . . . does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement" and finding that this holding is "limited to when the subject of the oral agreement is not covered by the contract").

Entities] had no intention to make those payments, and that the Payment Agreement would be intentionally breached."). Accordingly, the Court finds that Plaintiff's fraud allegations implicate the exception to Florida's general rule prohibiting fraud counts from being premised on promises of future action.[2]

### 2. Pleadings Based Upon "Information and Belief"

In addition to arguing that Plaintiff improperly bases its fraud count on promises of future action, Defendant Colandreo maintains that Plaintiff improperly supports its fraud count by making averments "upon information and belief." DE 74 at 4. Once again, Defendant Colandreo properly states the general rule but omits the exception.

"As a general matter Rule 9(b) precludes allegations of fraud based on information and belief." *Hekker v. Ideon Grp., Inc.*, No. 95-681-CIV-J-16, 1996 WL 578335, at *4 (M.D. Fla. Aug. 19, 1996). "However, where the subject matter of the fraud is uniquely within the adverse party's knowledge or control, allegations of fraud based upon information and belief may be acceptable." *Id.*; *see also U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) ("Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific factual information about the fraud is peculiarly within the defendant's knowledge or control. In that situation, a plaintiff's complaint may be plead upon information and belief provided that the legal theory is supported with factual allegations that make her theoretically viable claim plausible." (citation, quotation marks, and alterations omitted)); *Khan v. United States*, No. 13-24366-CIV, 2014 WL 12774204, at *4 (S.D. Fla. July 7, 2014) ("Rule 9(b)'s heightened pleading

---

[2] In the reply, Defendant Colandreo raises a new argument: "the alleged fraudulent statements about payments being made are also contained in the Payment Agreement, so they cannot provide the basis for claims of fraud." DE 92 at 4. However, because Defendant Colandreo raises this argument for the first time in his reply, the Court will not consider the argument. *See, e.g.*, *MY. P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 544 F. Supp. 3d 1334, 1349 (S.D. Fla. 2021) (noting that it is "well-established" that arguments raised for first time in a reply are deemed waived); *Amargos v. Verified Nutrition, LLC*, 666 F. Supp. 3d 1249, 1250 (S.D. Fla. 2022) ("Thus, to the extent that Defendant's Reply raises new arguments not addressed in its Motion . . . the Court will disregard such arguments.").

standard may be applied less stringently, however, when specific factual information about the fraud is peculiarly within the defendant's knowledge or control." (quoting *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003))).

Here, the subject matter of Plaintiff's fraud allegations—that Defendant Colandreo knew the CB Entities could not make the promised payments and that Defendant Colandreo knew the CB Entities had no intention to make any payments promised—all concern what Defendant Colandreo knew or intended to do at a point in time and thus involve information peculiarly within his knowledge. Plaintiff also supports these averments with other factual allegations that are not plead upon information and belief, such as that Defendant Colandreo had superior knowledge of the finances of the CB Entities and that the CB Entities failed to make the promised payments as required. DE 65 ¶¶ 147, 167.  As such, the Court finds that Plaintiff's fraud allegations plead upon information and belief are not improper and are supported by other factual allegations making Plaintiff's fraud count plausible.

### 3. Damages

Lastly, Defendant Colandreo contends Plaintiff's fraud count fails to state a claim because it does not "sufficiently allege any damages arising out of the alleged fraud." DE 74 at 7. In particular, Defendant Colandreo contends that one of the categories of damages Plaintiff alleges is "too speculative." *Id.* at 6. However, the Court finds that Defendant Colandreo has not met his burden of demonstrating that speculative damages cannot support Plaintiff's fraud cause of action arising under Florida law. *See Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) ("On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, No. 09-495, 2010 WL 3385356, at *4 (N.D. Fla. Aug. 25, 2010))).

To establish a claim for fraud in Florida, a party must demonstrate, among other elements, "injury by the party acting in reliance on the [false] representation." *Townsend v. Morton*, 36 So. 3d 865, 868 (Fla. 5th DCA 2010). Defendant Colandreo contends that one of Plaintiff's damage allegations—that because Plaintiff delayed initiating a lawsuit, based on Defendant Colandreo's false promises of payment, Plaintiff potentially will obtain a lower priority judgment or lien against the CB Entities and that the CB Entities' assets could be exhausted before Plaintiff can recover anything—is too speculative to establish this element. But Defendant Colandreo does not provide relevant legal authorities to support his position.

In the Motion to Dismiss, Defendant Colandreo does not offer any authorities supporting his contention. *See* DE 74 at 5–6. And in the reply, Defendant Colandreo only cites to *Poe v. Doe*, 540 F. Supp. 3d 1193, 1198 (S.D. Fla. 2020), as standing for the proposition that "Courts have granted motions to dismiss fraud claims where a plaintiff fails to allege legally adequate damages." DE 92 at 7. However, the court in *Poe* applied Tennessee law, and Tennessee law specifically holds that "speculative damages cannot support a cause of action for fraud." *Sharp v. Memphis Bonding Co.*, No. 18-2143, 2019 WL 1301993, at *14 (W.D. Tenn. Mar. 21, 2019). Defendant Colandreo has not provided the Court with any case law applying Florida law that reaches the same holding. Thus, the Court concludes that Defendant Colandreo has not met his burden of demonstrating that speculative damages cannot support a cause of action for fraud under Florida law. The Court does not recommend dismissing Plaintiff's fraud count against Defendant Colandreo for failure to state a claim.

### C. Defendant Colandreo's Motion to Dismiss Arguments Regarding the Negligent Misrepresentation Count

To argue that Plaintiff's negligent misrepresentation count fails to state a claim, Defendant Colandreo refers to the same arguments he raised against Plaintiff's fraud count and contends those arguments also provide a basis for dismissing Plaintiff's negligent misrepresentation count. DE 74

at 7–8. Because Defendant Colandreo does not provide any additional or new analysis or authorities when referring to his previous arguments, the Court is not persuaded for the same reasons it was not persuaded by Defendant Colandreo's arguments concerning Plaintiff's fraud count. As such, the Court does not recommend dismissing Plaintiff's negligent misrepresentation count against Defendant Colandreo for failure to state a claim.

### D. Defendant Colandreo's Motion to Dismiss Arguments Concerning the Breach of Fiduciary Duty Count

For Plaintiff's breach of fiduciary duty count, Defendant Colandreo raises four arguments as to why Plaintiff fails to state a claim. First, Defendant Colandreo argues that Plaintiff's allegations are improperly pled upon information and belief and are contradicted by other allegations Plaintiff raises. *Id.* at 8. Second, Defendant Colandreo contends that Florida law does not create any fiduciary relationship between him and Plaintiff. *Id.* at 9–10. Third, Defendant Colandreo maintains that the damages Plaintiff seeks are non-existent or too speculative. *Id.* at 10. Lastly, Defendant Colandreo asserts that Plaintiff never relied upon any of his representations before executing the payment agreement. *Id.* at 10–11. The Court will consider each contention in turn.

### 1. Plaintiff Plausibly Alleges Facts to Show the Insolvency of the CB Entities

"While 'information and belief' pleading can sometimes survive a motion to dismiss, a plaintiff must allege specific facts sufficient to support a claim." *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1261 n.21 (S.D. Fla. 2021). "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Id.* (quotation marks omitted); *see also Baker v. Akumin Corp.*, No. 0:23-CV-62396, 2024 WL 1931480, at *2 (S.D. Fla. Apr. 16, 2024) ("A court need not accept as true allegations made upon information and belief that lack enough facts to make the allegations plausible.").

Here, Defendant Colandreo claims that Plaintiff's allegations that the CB Entities were insolvent or on the verge of insolvency both are improperly pled upon information and belief and are contradicted by Plaintiff's other allegations regarding three partial payments the CB Entities made to Plaintiff. DE 74 at 8. Concerning Plaintiff's allegations that the CB Entities were insolvent or on the verge of insolvency, Plaintiff does not always plead those insolvency allegations upon information and belief. *See* DE 65 ¶ 151 ("Not later than March 2023 and thereafter, COLANDREO either knew or should have known that [the CB Entities] were insolvent or on the verge of insolvency."); ¶ 152 ("At that time, because of the actual or imminent insolvency of [the CB Entities], Colandreo, as an officer and/or director of those companies, owed creditors, including [Plaintiff], the following fiduciary duties . . . ."); ¶ 209 (realleging ¶¶ 151–52 into the breach of fiduciary duty count against Defendant Colandreo).

Additionally, Plaintiff includes sufficient factual allegations to support its insolvency theory, such as that the CB Entities agreed to pay Plaintiff $915,649.28 by June 2, 2023, and that the CB Entities only paid Plaintiff $30,454.60 by July 31, 2023, after needing their bond surety to pay the remaining $855,194.68. *See id.* ¶¶ 224–25. Thus, the Court finds that Plaintiff plausibly pleads facts to show that the CB Entities might have been insolvent or on the verge of insolvency, i.e., they had difficulties paying their debts when due. *Id.* ¶ 201 (allegation that the CB Entities were insolvent or on the verge of insolvency because they "were unable to pay all of their debts on time and in the ordinary course of business"); *see also Insolvent*, Black's Law Dictionary (11th ed. 2019) ("(Of a debtor) having liabilities that exceed the value of assets; having stopped paying debts in the ordinary course of business or being unable to pay them as they fall due.").

As for Defendant Colandreo's arguments that Plaintiff's allegations about the CB Entities' insolvency are contradicted by Plaintiff's other allegations that the CB Entities made partial payments, the Court does not agree for the following three reasons. First, the initial two partial

payments Defendant Colandreo references predate the execution of the payment agreement. *See* DE 65 ¶¶ 215–16 (acknowledgment by Plaintiff of the two partial payments and that the remaining balance after those payments was $915,649.28, which Defendant Colandreo purportedly agreed the CB Entities would pay as part of the payment agreement). And Plaintiff's specific allegation is that when Defendant Colandreo executed the payment agreement, he did so knowing the CB Entities could not pay the amount agreed to in the payment agreement due to their insolvency, and he failed to disclose this fact to Plaintiff. *Id.* ¶ 217. Second, as previously mentioned, Plaintiff's insolvency allegations refer to the CB Entities' ability to pay their debts when those debts were due, and two partial payments for a fraction of the alleged debt does little to establish that the CB Entities could timely pay their debts. Finally, as for the third partial payment of $30,454.60 made after the execution of the payment agreement, *id.* ¶ 225, the Court fails to see how that partial payment contradicts Plaintiff's insolvency allegations, seeing as that partial payment was allegedly made late and only after the CB Entities' bond surety paid the lion's share of the CB Entities' outstanding debt. Accordingly, for these reasons, the Court finds that Plaintiff plausibly pleads facts to show that the CB Entities may have been insolvent or on the verge of insolvency at the time the parties executed the payment agreement.

### 2. Whether Defendant Colandreo Owed Plaintiff Fiduciary Duties

The parties dispute whether Florida law creates fiduciary duties between the corporate officers of an insolvent corporation and the creditors of that corporation. On the one hand, Defendant Colandreo maintains that the insolvency of a corporation does not create any fiduciary duties between the corporate officers and the corporation's creditors.[3] DE 74 at 9–10 (citing *TTT*

---

[3] The Court does not understand Defendant Colandreo to argue that the purported insolvency of the CB Entities did not create the particular fiduciary duties Plaintiff claims he breached. Instead, the Court construes Defendant Colandreo's contention to be that the alleged insolvency of the CB Entities did not create *any* fiduciary duties between him and Plaintiff.

*Foods Holding Co. v. Namm*, No. 16-CV-81798, 2017 WL 2901329 (S.D. Fla. May 19, 2017));
DE 92 at 9. On the other hand, Plaintiff maintains that long-standing Florida law establishes a
fiduciary duty. DE 82 at 15–18. The Court agrees with Plaintiff.

Over one hundred years ago, the Florida Supreme Court acknowledged that directors of an
insolvent corporation occupy a fiduciary relationship with that corporation's creditors. *See Beach
v. Williamson*, 78 Fla. 611, 619 (Fla. 1919); *Guar. Tr. & Sav. Bank v. U.S. Tr. Co.*, 89 Fla. 324,
331 (Fla. 1925) ("The directors . . . of an insolvent corporation occupy toward the creditors of the
corporation a fiduciary relation in that the properties of the corporation constitute a fund for the
payment of the corporation's debts, which fund the directors are charged with managing to the
best interests of the creditors."). Since then, courts have almost unanimously read these cases as
standing for the proposition that directors of an insolvent corporation owe fiduciary duties to the
creditors of that corporation. *See In re Toy King Distribs., Inc.*, 256 B.R. 1, 166 (Bankr. M.D. Fla.
2000) ("Generally, an officer or director owes fiduciary duties exclusively to the corporation's
shareholders. When a corporation becomes insolvent, however, the officer or director's fiduciary
duties shift to the creditors of that corporation."); *Livesay Indus., Inc. v. Livesay Window Co.*, 305
F.2d 934, 940 (5th Cir. 1962) (applying Florida law) ("The record in every respect makes this clear
. . . that [the corporate directors] brazenly ignored their fiduciary responsibility which derives from
their directorships of an insolvent corporation, and resulting responsibility to creditors." (citing
*Beach*, 78 Fla. at 611; *Guar. Tr. & Sav. Bank*, 89 Fla. at 324)); *In re F & C Servs., Inc.*, 44 B.R.
863, 875 (Bankr. S.D. Fla. 1984) (acknowledging fiduciary relationship established by *Beach* and
*Guaranty Trust & Savings Bank*); *see also In re Aqua Clear Techs., Inc.*, 361 B.R. 567, 575 (Bankr.
S.D. Fla. 2007) ("An officer's or director's fiduciary duties are extended to the creditors of a
corporation when the corporation becomes insolvent or is in the 'vicinity of insolvency.'" (citing
*In re Toy King Distribs., Inc.*, 256 B.R. at 166)); *Jaime Torres Int'l Sports Mgmt., Inc. v. Kapila*,

No. 15-AP-01016-RAM, 2016 WL 8585339, at *6 (S.D. Fla. May 11, 2016) ("Florida law recognizes that corporate officers owe duties of loyalty and care to the corporation, and an officer's or director's fiduciary duties extend to the creditors of a corporation when the corporation becomes insolvent or is in the 'vicinity of insolvency.'" (citing *In re Aqua Clear Techs., Inc.*, 361 B.R. at 575)); *In re Sigma-Tech Sales, Inc.*, 570 B.R. 408, 418 (Bankr. S.D. Fla. 2017) ("An officer's or director's fiduciary duties are extended to the creditors of a corporation when the corporation becomes insolvent or is in the 'vicinity of insolvency.'" (quoting *In re Aqua Clear Techs., Inc.*, 361 B.R. at 575)).

However, the *TTT Foods Holding Co.* court declined to follow this body of case law. Relying on Delaware law to construe Florida corporate law,[4] the *TTT Foods Holding Co.* court ruled that directors of an insolvent corporation do not owe direct fiduciary duties to creditors under Florida law. 2017 WL 2901329, at *11. In reaching this conclusion, the *TTT Foods Holding Co.* court read *Guarantee Trust & Savings Bank* narrowly and as only prohibiting "preferential payment of debts owed to directors over debts owed to creditors" and permitting "a creditor cause of action for breach of fiduciary duty . . . only to the extent of the creditor's claim against the corporation." *Id.* at *11 n.22. The *TTT Foods Holding Co.* court also found *In re Toy King Distributors* inapposite. Specifically, the *TTT Foods Holding Co.* court noted that *In re Toy King Distributors* cited *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787–88 (Del. Chl. 1992), a Delaware Court of Chancery case which suggested directors of insolvent corporation could owe fiduciary duties to that corporation's creditors under Delaware law. 2017 WL 2901329, at *11.

---

[4] Florida courts can look to Delaware law for clarification on Florida's corporate doctrines. *See Boettcher v. IMC Mortg. Co.*, 871 So. 2d 1047, 1052 n.5 (Fla. 5th DCA 2004) ("We may also look to the law of Delaware for guidance because '[t]he Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines.'" (quoting *Connolly v. Agostino's Ristorante, Inc.*, 775 So. 2d 387, 388 n.1 (Fla. 2d DCA 2000))); *see also Ezer v. Holdack*, 358 So. 3d 429, 432 (Fla. 4th DCA 2023) ("Where Florida law has not spoken as to a corporate term or statute, courts often look to Delaware law."); *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1459 n.22 (11th Cir. 1989) ("We rely with confidence upon Delaware law to construe Florida corporate law. The Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines.").

But the *TTT Foods Holding Co.* court explained that, in 2007, the Delaware Supreme Court clarified that directors of an insolvent corporation do not owe fiduciary duties to that corporation's creditors under Delaware law. *Id.* (citing *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 103 (Del. 2007)).

This Court does not find *TTT Foods Holding Co.*'s reason for departing from the overwhelming body of contrary case law to be persuasive for two reasons. First, *In re Toy King Distributors* cited *Guaranty Trust & Savings Bank* as the primary authority supporting its position that Florida law establishes a fiduciary duty between directors of an insolvent corporation and that corporation's creditors. *See* 256 B.R. at 166–167. *In re Toy King Distributors*' citation to *Geyer* was only offered as additional support, as evidenced by the use of the *see also* citation signal. *See id.* As such, *In re Toy King Distributors*' ruling is based on *Guarantee Trust & Savings Bank*, which has not been overruled or otherwise clarified by the Florida Supreme Court, and not *Geyer*. Moreover, even after *Gheewalla*, courts still hold that Florida law establishes a fiduciary duty between the directors of an insolvent corporation and that corporation's creditors and cite favorably to the cases *TTT Foods Holding Co.* declined to follow, as evidenced by the cases this Court previously cited above. This suggests that Florida law is clear on this issue and that there is no need to look to Delaware law for clarification. Accordingly, this Court sides with the overwhelming number of other courts in this District that have found Florida law to establish fiduciary duties between directors of an insolvent corporation and that corporation's creditors.

### 3. Damages

Defendant Colandreo contends that Plaintiff's claimed damages for its breach of fiduciary duty count mirror the damages Plaintiff alleges in its fraud and negligent misrepresentation counts, and Defendant Colandreo adopts the same arguments he raised as to damages for those counts. DE 74 at 10. Because Defendant Colandreo does not provide any additional analysis or authorities

when re-raising his previous arguments, the Court is not persuaded for the same reasons it was not persuaded by Defendant Colandreo's previous arguments.

### 4. Plaintiff has Plausibly Pled Facts to Show a Breach of a Fiduciary Duty

In its Corrected Second Amended Complaint, Plaintiff avers that Defendant Colandreo owed it the fiduciary duty to make an accurate and full disclosure of, among other things, "[a]ll information concerning [the CB Entities'] ability or inability to pay [Plaintiff] as represented and in accordance with the terms of the Payment Agreement." DE 65 ¶ 210. And Plaintiff alleges that Defendant Colandreo breached this duty by failing "to fully and fairly disclose to [Plaintiff] that [the CB Entities] could or would not pay the remaining balance of $915,649.28" when Defendant Colandreo offered to execute the payment agreement. *Id.* ¶ 217. Defendant Colandreo contends in the Motion to Dismiss that "there is no allegation that [Plaintiff] ever requested that information," but this argument misconstrues Plaintiff's averments. As demonstrated above, Plaintiff alleges that Defendant Colandreo was under the fiduciary duty to affirmatively disclose information to Plaintiff prior to entering into the payment agreement, not merely answer a question if asked. And Florida law supports the existence of this duty for fiduciaries. *See Cap. Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994) (noting that a fiduciary owes a duty to "disclose material facts" and "must disclose fairly and honestly to the client all the facts which might be presumed to influence him in regard to his actions"); *First Union Nat'l Bank v. Turney*, 839 So. 2d 774, 778 (Fla. 1st DCA 2003) (finding withholding of information to constitute breach of fiduciary duty).

Defendant Colandreo also maintains that the payment agreement itself contradicts Plaintiff's allegations. DE 74 at 11. Specifically, Defendant Colandreo highlights the fact that the payment agreement states the agreement was made "in consideration of the foregoing premises and the mutual promises set forth herein" and that the agreement "contains the entire agreement between the parties." *Id.* However, none of these portions of the payment agreement contradict

Plaintiff's actual allegation—that Defendant Colandreo had an affirmative duty to disclose to Plaintiff that the CB Entities could not make the payments required by the payment agreement before the parties executed that agreement. Therefore, the Court concludes that Plaintiff has plausibly pled facts to demonstrate that Defendant Colandreo may have breached a fiduciary duty. The Court does not recommend dismissing Plaintiff's breach of fiduciary duty count for failure to state a claim.

## IV. Plaintiff's Counts Against Defendant Taylor

Plaintiff pleads three counts against Defendant Taylor: (1) common law fraud, (2) negligent misrepresentation, and (3) breach of fiduciary duty. The factual allegations underlying these claims are the same, and the Court begins by recounting those allegations. Afterwards, the Court evaluates the arguments Defendant Taylor raises in the Motion to Dismiss.

### A. Plaintiff's Allegations

For all three of its counts against Defendant Taylor, Plaintiff begins by averring that Defendant Taylor was the CEO and president of the CB Entities, and Defendant Taylor, as the CEO of the CB Entities, purportedly knew everything the CB Entities knew. DE 65 ¶ 257. As a result, Defendant Taylor allegedly knew or should have known that the CB Entities were insolvent or on the verge of insolvency in or around March 2023. *Id.* ¶¶ 258–59. Based on this allegation of the CB Entities' actual or imminent insolvency, Plaintiff asserts that Defendant Taylor owed creditors, such as Plaintiff, certain fiduciary duties. *Id.* ¶¶ 260–61.

In March of 2023, an individual from the CB Entities allegedly asked Plaintiff to deliver lumber to the Altis Suncoast construction project. *Id.* ¶ 262. Plaintiff claims that it agreed to make those deliveries and delivered $224,838.09 worth of lumber and materials to the Altis Suncoast project. *Id.* ¶¶ 264–65. However, the CB Entities purportedly refused to pay Plaintiff $224,838.09 when it became due. *Id.* ¶ 267.

At the previously described May 11, 2023 Zoom meeting, Plaintiff asserts that it asked Defendant Taylor when it would receive payment for the Altis Suncoast debt. *Id.* ¶ 268. According to Plaintiff, Defendant Taylor acknowledged that $224,838.09 was due for the Altis Suncoast project and that the delay in payment was "the result of cash flow problems." *Id.* Nevertheless, Plaintiff claims that Defendant Taylor stated the CB Entities could pay the amount owed for the Altis Suncoast project within four weeks. *Id.* ¶ 270. But Plaintiff maintains that Defendant Taylor knew this statement was false at the time he made it and that Defendant Taylor knew the CB Entities did not intend to make any payment to Plaintiff for the Altis Suncoast project. *Id.* ¶¶ 271, 273.

On May 26, 2023, Plaintiff avers that Defendant Taylor told it that a joint check would arrive soon to pay the Altis Suncoast debt, but Plaintiff claims that Defendant Taylor knew this statement was false at the time he made it and knew Plaintiff would not be paid. *Id.* ¶¶ 274–76. Furthermore, on a June 7, 2023 telephone call, Plaintiff alleges that Defendant Taylor stated that the CB Entities would send Plaintiff a check to pay the Altis Suncoast debt, but Plaintiff maintains that Defendant Taylor knew the statement was false and knew Plaintiff would not be paid. *Id.* ¶¶ 277–79.

As a result of Defendant Taylor's allegedly fraudulent statements, Plaintiff alleges that it was damaged in the following two ways. First, Plaintiff asserts Defendant Taylor induced Plaintiff to forbear from filing a lien on the Altis Suncoast project. Plaintiff believes that, if it had filed a lien, the owner or general contractor of the Altis Suncoast project would have paid the amount owed. *Id.* ¶ 284. Second, Plaintiff claims that two other creditors of the CB Entities filed lawsuits in the time frame that Defendant Taylor purportedly induced Plaintiff to forbear from filing a lawsuit. *Id.* Thus, Plaintiff argues that it has been damaged insofar as any judgment it can now

18

obtain will have a lower priority and that the CB Entities' assets may be exhausted before Plaintiff can recover anything from a potential judgment. *Id.*

**B. Defendant Taylor's Motion to Dismiss Arguments Concerning Plaintiff's Fraud Count**

Like Defendant Colandreo, Defendant Taylor maintains that Plaintiff's fraud count against himself fails to state a claim because it is premised upon statements of future action. DE 74 at 12. Once again, this argument ignores the well-established exception under Florida law. *See, e.g.*, *Nodus Int'l Bank, Inc.*, 511 F. Supp. 3d at 1324 ("In short, a promise of future action cannot be the basis of a fraud claim unless the promisor lacks the intent to make good on that promise at the time the promise is made."). And Plaintiff's fraud allegations against Defendant Taylor implicate this exception. *See, e.g.*, DE 65 ¶ 273 ("TAYLOR knew that the statement described in ¶ 270 [that the CB Entities would be paid money which would then be used to pay Plaintiff for the lumber deliveries] was false, because TAYLOR knew that [one of the CB Entities] would not receive funding which would be available to pay MACSOUTH at that time."); ¶ 276 ("TAYLOR knew the statement in ¶ 274 [that a joint check would be coming to Plaintiff to pay for alleged debt] was false, because TAYLOR knew that [one of the CB Entities] did not intend to deliver a joint check or make any other payment to MACSOUTH at that time.").

Additionally, Defendant Taylor argues that the damages Plaintiff claims as a result of the purported fraud are too speculative. DE 74 at 13. But since Defendant Taylor relies on the same analysis and support that Defendant Colandreo offered, without providing any additional or new authorities, the Court is not convinced by Defendant Taylor's arguments for the same reasons it was not convinced by Defendant Colandreo's arguments. The Court does not recommend dismissing Plaintiff's fraud count against Defendant Taylor for failure to state a claim.

### C. Defendant Taylor's Motion to Dismiss Arguments Regarding Plaintiff's Negligent Misrepresentation Count

Defendant Taylor reasserts the arguments he raised against Plaintiff's fraud count to argue that Plaintiff's negligent misrepresentation count also fails to state a claim. *Id.* at 14. Because Defendant Taylor does not provide any new analysis or authorities, the Court is not convinced for the same reasons it was not convinced by Defendant Taylor's arguments regarding Plaintiff's fraud count. Accordingly, the Court does not recommend dismissing Plaintiff's negligent misrepresentation count against Defendant Taylor for failure to state a claim.

### D. Defendant Taylor's Motion to Dismiss Arguments Against Plaintiff's Breach of Fiduciary Duty Count

Lastly, Defendant Taylor raises similar arguments as Defendant Colandreo as to why Plaintiff's breach of fiduciary duty count fails to state a claim. Specifically, Defendant Taylor contends: (1) that Plaintiff's insolvency allegations are improperly based upon information and belief and are contradicted by other allegations, (2) that Florida law does not recognize a fiduciary duty between himself and Plaintiff, and (3) that the damages Plaintiff seeks are too speculative. *Id.* at 15–17. The Court will address each argument in turn.

#### 1. Plaintiff Plausibly Alleges Facts to Show the Insolvency of the CB Entities

"While 'information and belief' pleadings can sometimes survive a motion to dismiss, a plaintiff must allege specific facts sufficient to support a claim." *United Am. Corp.* 530 F. Supp. 3d at 1261 n.21. "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Id.* (quotation marks omitted); *see also Baker*, 2024 WL 1931480, at *2 ("A court need not accept as true allegations made upon information and belief that lack enough facts to make the allegations plausible.").

Here, Defendant Taylor claims that Plaintiff's allegation that the CB Entities were insolvent or on the verge of insolvency both is improperly pled upon information and belief and is also contradicted by Plaintiff's other allegations that the CB Entities made three partial payments to Plaintiff. DE 74 at 15. Concerning Defendant Taylor's first argument, Plaintiff does not always allege upon information and belief that the CB Entities were insolvent at the relevant times. *See* DE 65 ¶ 259 ("Not later than March 2023 and thereafter, TAYLOR either knew or should have known that the [CB Entities] were insolvent or on the verge of insolvency."); ¶ 260 ("At that time, because of the actual or imminent insolvency of [the CB Entities], TAYLOR, as an officer and/or director of those companies, owed creditors, including MACSOUTH, the following fiduciary duties . . . .").

Additionally, Plaintiff pleads factual allegations to make its insolvency theory plausible, such as that Defendant Taylor admitted that the CB Entities were having financial difficulties paying their debts on time. *See id.* ¶ 311 (alleging that on May 11, 2023, Defendant Taylor acknowledged that the delay in payment to Plaintiff "was the result of cash flow problems"); ¶ 312 ("TAYLOR stated that [one of the CB Entities] did not have the funds at that time to pay for the lumber delivered for the Altis Suncoast Project."). Consequently, the Court finds that Plaintiff plausibly pleads facts to show that the CB Entities may have been insolvent or on the verge of insolvency at the relevant time periods.

As for Defendant Taylor's argument that Plaintiff's insolvency allegations are contradicted by Plaintiff's other allegations, the Court is not convinced. Defendant Taylor highlights Plaintiff's allegations that the CB Entities made three partial payments for one of the construction projects at issue, but two of those partial payments occurred before the time period underlying Plaintiff's breach of fiduciary duty allegations. *Compare id.* ¶¶ 311, 317, 320 (alleging Defendant Colandreo made false statements on May 11, May 26, and June 27), *with id.* ¶ 215 (alleging two partial

payments from the CB Entities occurring before May 9). And as for that alleged third partial payment on July 28, 2023, for $30,454.60, the Court finds that the partial payment does not contradict Plaintiff's insolvency allegations. According to Plaintiff, the CB Entities only made that third partial payment for $30,454.60 after Defendant Travelers Casualty and Surety Company of America, the CB Entities' bond surety, paid the remaining $885,194.67 that the CB Entities owed for that particular construction project. *See id.* ¶¶ 22–24. Moreover, the Court again fails to see how partial payments for a fraction of the total amount purportedly owed demonstrate that the CB Entities could pay their debts on time. As such, the Court finds that Plaintiff's allegations of partial payments do not contradict its other allegations that the CB Entities were either insolvent or on the verge of insolvency due to their inability to timely pay their debts.

**2. Whether Florida Law Permits Plaintiff's Breach of Fiduciary Duty Theory**

Utilizing the same case law and argument as Defendant Colandreo, Defendant Taylor contends that Florida law does not create any fiduciary duties between the corporate officers of an insolvent corporation and the creditors of that corporation. DE 74 at 16–17. For the same reasons previously stated, the Court finds that that Florida law permits Plaintiff's breach of fiduciary duty cause of action.

**3. Damages**

Finally, Defendant Taylor repeats his previously raised arguments that the damages Plaintiff seeks are too speculative. *Id.* at 17. Since Defendant Taylor does not offer any new analysis or authorities for his position, the Court is not convinced by Defendant Taylor's argument for the same reasons that it was not convinced by his arguments previously. The Court does not recommend dismissing Plaintiff's breach of fiduciary duty count against Defendant Taylor for failure to state a claim.

**V. Recommendation**

For the foregoing reasons, the Court **RECOMMENDS DENYING** Defendant Colandreo and Taylor's Motion to Dismiss [DE 74].

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 26th day of July, 2024.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE